ILLINOIS CENTRAL GULF RAILROAD, Plaintiff-Appellant, v. MERWIN H. EATON *et al.*, Defendants-Appellees.

Fifth District No. 5—85—0123

Opinion filed November 19, 1985.

William W. Hart, Jr., and A. Courtney Cox, both of Hart & Hart, of Benton, for appellant.

Paul M. Caldwell and Edwina D. Warner, both of Caldwell, Troutt, Alexander, Quindry & Popit, of Benton, for appellees.

JUSTICE KARNS delivered the opinion of the court:

Petitioner, Illinois Central Gulf Railroad, appeals from the judgment of the circuit court of Franklin County, entered January 29, 1985, dismissing petitioner's amended petition for condemnation.

Petitioner filed a petition for condemnation on April 15, 1983, seeking to exercise its right of eminent domain to acquire land owned by respondents, Merwin and Marilyn Eaton, for the purpose of constructing a wye track at the intersection of two railroad tracks. Respondents' motion to dismiss alleged that petitioner had failed to obtain prior authority from the Illinois Commerce Commission before initiating proceedings pursuant to its power of eminent domain and to set forth facts to support its claim that the condemnation was necessary to serve a public purpose. On August 4, 1983, the circuit court entered an order finding that petitioner was not required to obtain prior approval from the Illinois Commerce Commission. Petitioner was allowed to file an amended petition to plead sufficient facts relative to public use and necessity to which respondents filed a motion to dismiss and traverse.

On December 11, 1984, respondents filed a motion to reconsider asking the court to reverse its order and enter an order granting respondents' motion to dismiss. Respondents based their motion on *Illinois Bell Telephone Co. v. Lewis* (1983), 117 Ill. App. 3d 72, 452 N.E.2d 588, which was not published at the time respondents had filed their initial motion to dismiss. Relying on that case, the court dismissed petitioner's amended petition for condemnation. Petitioner filed notice of appeal on February 21, 1985.

The sole issue raised on appeal is whether Illinois Central Gulf Railroad must obtain prior approval from the Illinois Commerce Commission before exercising its power of eminent domain. Petitioner contends that section 300.60 of the Illinois Administrative Code (Ill. Admin. Code 1983, ch. 1. pt. 300) exempts railroads from section 50 of the Public Utilities Act, which requires all public utilities to obtain an order from the Illinois Commerce Commission before exercising their power of eminent domain. (Ill. Rev. Stat. 1983, ch. 111⅔, par. 50.) Respondents argue that according to *Illinois Bell Telephone Co. v. Lewis* (1983), 117 Ill. App. 3d 72, 452 N.E.2d 588, all public utilities are required to obtain approval from the Illinois Commerce Commission before proceeding in court pursuant to the power of eminent domain.

Railroads were given the power of eminent domain by the Illinois legislature in 1872. (Ill. Rev. Stat. 1874, ch. 114, par. 18.) Section 50 of the Public Utilities Act states that whenever the Illinois Commerce Commission finds, after a hearing, that a new structure is necessary to promote the security or convenience of a public utility's employees, or the public, or in any other way to secure adequate service or facilities, the Commission shall serve an order authorizing the public utility to build the structure at the location. (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 50.) Once the Illinois Commerce Commission has determined that an order should be granted, section 59 of the Act states that the public utility may enter upon, take or damage private property in the manner provided for by the law of eminent domain. Ill. Rev. Stat. 1983, ch. 111²/₃, par. 63.

These same sections of the Public Utilities Act (Ill. Rev. Stat. 1983, ch. 111²/₃, pars. 50, 63), were relied upon by the fourth district in reaching its decision in *Illinois Bell Telephone Co. v. Lewis* (1983), 117 Ill. App. 3d 72, 452 N.E.2d 588. The issue in that case was whether a telephone company must follow the provisions of the Telegraph and Telephone Act or the provisions of the Public Utilities Act when it condemns private property. (*Illinois Bell Telephone Co. v. Lewis* (1983), 117 Ill. App. 3d 72, 73, 452 N.E.2d 588, 589.) In reaching its decision that Illinois Bell must follow both acts, the court stated that "[t]he 1921 act impliedly repealed the authority given telephone companies in the 1903 act to condemn private property without permission from the State." (*Illinois Bell Telephone Co. v. Lewis* (1983), 117 Ill. App. 3d 72, 75, 452 N.E.2d 588, 590.) The court concluded that before Illinois Bell, a public utility, could exercise its eminent domain power under the Telegraph and Telephone Act, it must first obtain permission from the Illinois Commerce Commission as required by the Public Utilities Act. *Illinois Bell Telephone Co. v. Lewis* (1983), 117 Ill. App. 3d 72, 75, 452 N.E.2d 588, 590.

The instant case is strikingly similar to the *Lewis* case. Petitioner is a public utility as defined by section 10.3 of the Public Utilities Act (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 10.3; *Chicago Junction Ry. Co. v. Illinois Commerce Com.* (1952), 412 Ill. 579, 583, 107 N.E.2d 758, 760.) In addition, both public utilities were given the power of eminent domain prior to the enactment of the Public Utilities Act in 1921. Hurd Rev. Stat. 1903, ch. 134, par. 19; Ill. Rev. Stat. 1874, ch. 114, par. 18.

The distinction between the case at bar and the *Lewis* case centers on the applicability of the Illinois Administrative Code's General Order 226: Guidelines on Right-of-Way Acquisitions. (Ill. Admin. Code

1983, ch. 1, par 300, secs. 300.10 through 300.70.) Section 300.10 of the Code states:

> "Whenever any public utility seeks to negotiate the acquisition of a land right-of-way easement involving a project which requires *** an Order under Section 50 of the [Public Utilities] Act (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 50) *this Part* shall apply." (Emphasis added.)

Section 300.20 of the Code requires the public utility to file an informational packet with the Illinois Commerce Commission and section 300.30 governs the negotiation process in acquiring land. (Ill. Admin. Code 1983, ch. 1, pt. 300.) Section 300.40 states that "[t]his Part shall not be prospectively applied," and section 300.50 of the Code states that "[t]his Part shall not cause revocation of any existing Commission certificate." (Ill. Admin. Code 1983, ch. 1, pt. 300.) Section 300.60 of the Code (Ill. Admin. Code 1983, ch. 1, pt. 300) states:

> "*This Part* shall not apply to a railroad company seeking to exercise the power of eminent domain under Section 17 of 'An Act to provide for the incorporation of associations that may be organized for the purpose of constructing railways ***' " (Emphasis added.)

■ The decision of whether the Code exempts railroads from the requirement of obtaining prior approval of the Illinois Commerce Commission as required by the Public Utilities Act (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 50) lies in the interpretation of whether the language "this Part" in section 300.60 of the Code (Ill. Admin. Code 1983, ch. 1, pt. 300) refers to section 50 of the Public Utilities Act or part 300 of the Code itself. We find the reference to be to the latter. In essence, section 300.60 of the Code states that the guidelines pertaining to the filing of the informational packet and the negotiation process of acquiring land need not be followed by railroad companies. The Code is in complete accord with the Public Utilities Act and does not attempt to exempt railroad companies from the requirements of the Act.

■ Having dispensed with petitioner's contention that the Illinois Administrative Code exempts it from the requirement of obtaining prior approval from the Illinois Commerce Commission, we find this case indistinguishable from *Illinois Bell Telephone Co. v. Lewis* (1983), 117 Ill. App. 3d 72, 452 N.E.2d 588. We adhere to the view that "[a]bsent compelling differences or controlling precedent to the contrary, the decision of another appellate division should be followed." (*Cornue v. Weaver* (1975), 29 Ill. App. 3d 546, 553 n.1, 331 N.E.2d 148, 154 n.1; see generally Mattis & Yalowitz, *Stare Decisis Among [sic] the*

*Appellate Court of Illinois*, 28 DePaul L. Rev. 571 (1979).) As in *Lewis*, the Public Utilities Act impliedly repealed the authority given to the railroads in 1872 to act pursuant to the power of eminent domain without permission from the State. (Ill. Rev. Stat. 1983, ch. 111²/₃, pars. 50, 63.) Therefore, petitioner, a public utility, may exercise its power of eminent domain. (Ill. Rev. Stat. 1983, ch. 114, par. 18.) First, however, it must obtain an order from the Illinois Commerce Commission. (Ill. Rev. Stat. 1983, ch. 111²/₃, pars. 50, 63.) This procedure is clearly mandated by the Illinois legislature, and given the function of the Illinois Commerce Commission to regulate public utilities, we cannot agree with petitioner's contention that this two-step process serves no useful purpose.

■ The trial court was correct in applying the decision reached in *Illinois Bell Telephone Co. v. Lewis* (1983), 117 Ill. App. 3d 72, 452 N.E.2d 588, and concluding that petitioner's amended petition for condemnation should be dismissed where petitioner could not demonstrate that prior authorization to acquire respondents' land had been obtained from the Illinois Commerce Commission.

The decision of the circuit court of Franklin County is affirmed in all respects.

Affirmed.

WELCH and KASSERMAN, JJ., concur.